**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**
No. 95-60026
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

DONALD RAY REED,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
(3:93 CV 200 (92 CR 026))

_____

August 24, 1995

Before GARWOOD, HIGGINBOTHAM and DAVIS, Circuit Judges.

PER CURIAM:[1]

Donald Ray Reed challenges the district court's dismissal of his § 2255 petition. We affirm.

I.

Reed and his co-defendant, Donald Hooker, were charged in a six-count indictment with various drug trafficking and firearm offenses. At trial, both Reed and Hooker were represented by the same counsel, Mr. Gaines Dyer. Both signed a "Waiver of Conflict of Interest." Reed was convicted on all counts charged. On direct

---

[1] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the court has determined that this opinion should not be published.

appeal, this court reversed Reed's conviction for unlawful possession of a firearm with an obliterated serial number (count 6) and affirmed the conviction on all of the other counts. See United States v. Hooker, 997 F.2d 67, 69 (5th Cir. 1993).

Reed then filed a pro se motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255. The petition is based primarily on Reed's contention that he was denied effective assistance of counsel. Before the Government was served or filed a response, the district court, who presided over the trial, denied the motion. The court found that Reed was capably represented by qualified counsel, that potential conflicts of interest were properly handled, and that the remaining allegations lacked merit. Reed filed a timely notice of appeal.

II.

Reed makes two arguments in support of his claim that his counsel provided ineffective assistance: (1) that his counsel's representation of both him and Hooker created a conflict of interest, and (2) that counsel failed to call a witness that could have rebutted the testimony of the government's main witness. We address each of these arguments in turn.

A.

To establish ineffective assistance of counsel, a defendant must show that counsel's actions were deficient and that the defendant was prejudiced as a result. Strickland v. Washington, 466 U.S. 668, 698 (1984). Joint representation is not a per se violation of the Sixth Amendment. Burger v. Kemp, 483 U.S. 776,

2

783 (1987). Rather, the petitioner must show that there was an actual conflict of interest that adversely affected counsel's performance. Id. As this court has explained:

> An actual conflict of interest exists whenever one defendant stands to gain significantly by advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing. Prejudice is presumed with respect to a defendant's ineffective assistance of counsel claim only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected counsel's performance. "Adverse effect" is a less onerous standard, of course, than the outcome-determinative "prejudice" standard.

United States v. McCaskey, 9 F.3d 368, 381 (5th Cir. 1993), cert. denied, 114 S. Ct. 1565 (1994).

Reed argues that counsel's representation of both him and Hooker prevented him from pursuing Reed's defense theory that the sale of drugs to a confidential informant ("CI") was the sole act of Hooker because it conflicted with Hooker's alibi defense.[2] However, the record belies Reed's assertions. It reveals that the defendants employed a united "it didn't happen" strategy, through which they attacked the credibility of the CI and unintelligibility of the recorded conversations from the wire that the CI wore on the day in question.

At trial, Reed testified that although the "CI" attempted to purchase drugs from him at Reed's residence on January 29, 1992,

---

[2]    In his petition to the district court, Reed also alleged in this regard that counsel: (1) failed to present evidence that Hooker did not kill the CI and DEA agent Craig because Reed refused to help him; and (2) failed to present mitigating evidence at sentencing that Reed had prevented Hooker from killing the CI and the agent. Because Reed does not reiterate these arguments on appeal, we deem them abandoned.

Reed told him that he did not sell drugs. Reed testified that he then left the house to go down the street, leaving the CI in the house. According to Reed, when he returned to the house, the CI was gone. Hooker testified that although he had been at Reed's house earlier in the day, he had left before the CI arrived. Reed confirmed that Hooker had left before the CI's arrival. Other witnesses at the house on that day confirmed Reed and Hooker's story.

The CI presented a much different version of the events. He testified that both Reed and Hooker were at Reed's house when he approached Reed to purchase drugs. According to the CI, Reed stated that he did not sell drugs and left the house, leaving the CI with Hooker. When Reed returned to the house after walking down the street and talking to someone in a car, he asked the CI whether Hooker had gotten him the drugs. When the CI replied no, Reed talked to Hooker for a while. Hooker then asked the CI to walk down the street with him. After they had walked down the street, Hooker gave the CI some cocaine which he retrieved from his baseball cap.

Hooker's alibi defense was therefore not inconsistent with Reed's defense that he did not sell the drugs to the CI. The jury, however, chose not to credit the defendants' version of the events, choosing instead the version offered by the CI. Reed now argues in retrospect that his counsel was ineffective for having chosen the "united front" approach rather than a "shifting the blame" approach.

4

In <u>United States v. Benavidez</u>, 664 F.2d 1255, 1259-61, we rejected a similar argument, stating:

> Taken to its limit, appellant's argument would necessitate a per se rule against requiring separate representation: every time a lawyer represents more than one defendant, he is precluded from "shifting the blame" to the client against whom the government presents the stronger case. It has long been settled, however, that joint representation is not unconstitutional per se. And it has long been recognized that "[j]oint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack."
>
> Thus, we doubt that there can be a constitutional violation when the only claim of conflict is that a defendant should have abandoned the common defense and invited reciprocal recrimination, not because the government introduced evidence indicating the defendant's innocence, but solely because the government made a stronger case against his codefendant. We have routinely rejected claims that defense counsel needed to be free to abandon a "united front" strategy . . . .
>
> Even if a constitutional violation could be proved in this manner, neither defendant has demonstrated an actual conflict because neither has shown that he stood "to gain significantly" by abandoning the common defense.

<u>Id.</u> at 1260-61 (citations and internal quotations omitted). As in <u>Benavidez</u>, Reed does not argue that counsel had reason to believe at the outset that the united strategy was not in his best interest or that a plausible alternative was available. Thus, the district court did not err in dismissing Reed's conflict of interest claim.[3]

---

[3] Reed's also alleges that because of the joint representation counsel was precluded from: exploring possible plea negotiations, including the possibility that Reed would testify for the prosecution; challenging the admission of evidence that was prejudicial to one client but favorable to the other; and calling Hooker as a witness. These arguments are too conclusory to raise a constitutional issue. <u>See</u> <u>United States v. Pineda</u>, 988 F.2d 22, 23 (5th Cir. 1993).

5

B.

Reed argues next that counsel was ineffective when he failed to call Reed's cousin, Clifton McDaniel, to rebut the CI's testimony and to corroborate Reed's defense. He argues that, had counsel called McDaniel, the outcome would have been different. At trial, the CI testified that before the January 29, 1992 drug purchase, he had previously purchased drugs from Reed and had also accompanied McDaniel when he purchased drugs from Reed. According to Reed, had McDaniel been called as a witness, he would have testified that the CI had never gone with him to buy drugs from Reed.

The record reveals that counsel strenuously objected to the CI's testimony concerning McDaniel, but was overruled. More importantly, it reveals that counsel impeached the CI on cross-examination by developing testimony that at the time the CI claimed he went with McDaniel to buy drugs from Reed, Reed was serving a prison sentence on an unrelated charge. McDaniel's testimony would have only underscored this point. Counsel's decision not to call McDaniel to further contradict the CI's testimony was a reasonable strategic choice, not a serious error. Thus, this claim also fails.

III.

Reed next raises two issues for the first time on appeal, namely: (1) that the indictment should be dismissed because it was based on perjured testimony; and (2) that he was placed in double jeopardy when both criminal charges and a civil forfeiture

6

complaint were brought against him based on the same offenses. "[I]ssues raised for the first time on appeal `are not reviewable by this court unless they involve purely legal questions and failure to consider them would result in manifest injustice.'" United States v. Garcia-Pillado, 898 F.2d 36, 39 (5th Cir. 1990) (quoting Self v. Blackburn, 751 F.2d 789, 793 (5th Cir. 1985)). Reed's arguments do not meet this criteria.

Finally, we note that Reed does not address on appeal the remaining issues raised in his § 2255 motion. These claims are therefore deemed abandoned. See Brinkmann v. Dallas County Deputy Sheriff Abner, 813 F.2d 744, 748 (5th Cir. 1987).


AFFIRMED.[4]

---

[4] Reed also filed motions seeking the production of grand jury transcripts and forfeiture notices, as well as a 20-day extension to file a reply brief. Given our disposition of the appeal, we deny those motions. We also deny Reed's request for a copy of the "Waiver of Conflict of Interest" because it is already in the record.